### In re POTTER INSTRUMENT CO., INC., Debtor.

### In re POTTER DATA PRODUCTS CORP., Debtor.

### In re POTTER DATA SYSTEMS, INC., Debtor, Appellees.

### Appeal of John T. POTTER.

Nos. 355–357, Dockets 78–5042 to 78–5044.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1978.

Decided Feb. 28, 1979.

---

11. *See* footnote 7, *supra.*

Carl A. Binder, Binder, Mishkin, Stangler & Strear, Carle Place, N. Y., for appellant.

Jonathan Director, Bressler, Lipsitz & Rothenberg, New York City, for debtor-appellees.

Before WATERMAN, MANSFIELD, and OAKES, Circuit Judges.

OAKES, Circuit Judge:

John T. Potter, a major stockholder in Potter Instrument Co., Inc. (PICO), appeals from two orders of the United States District Court for the Eastern District of New York, Jacob Mishler, Chief Judge, in a Chapter XI bankruptcy proceeding involving PICO. Both orders affirmed orders of the bankruptcy court, William J. Rudin, Bankruptcy Judge. On three separate appeals, Potter urges three points: (1) the Chapter XI proceeding should be dismissed in favor of a Chapter X proceeding; (2) the bankruptcy court should order a special meeting of PICO's shareholders for the purpose of electing members of the board of directors; and (3) the bankruptcy court improperly granted PICO management a proxy to vote the shares of appellant Potter. For the reasons that follow, we reject these claims and affirm the orders of the district court.

A brief statement of the facts underlying these appeals will help illuminate the issues. In April 1975 PICO and its wholly-owned domestic subsidiaries filed petitions for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. The bankruptcy court authorized PICO to continue to operate the business as debtor-in-possession. At the time of the petition, PICO owed approximately $24,000,000 to its secured creditors and $7,200,000 to its unsecured creditors. In December 1976 PICO entered into a settlement agreement (the "Lender Agreement") with its secured creditors, agreeing to pay the three institutional lenders a minimum of $2,400,000 in cash and to issue preferred stock equal to the balance of the indebtedness, in consideration of the compromise of approximately $19,200,000 in debt. The provision for the issuance of stock requires amendments to PICO's governing instruments, amendments that are subject to stockholder approval. Although PICO has made substantial payments to its secured creditors, it is in default under the terms of the Lender Agreement. If the default is called, the unpaid balance of the original debt—approximately $18,000,000—will become due, the secured creditors may seize all the debtor's assets, and no assets will remain for the claims of general creditors or for distribution to stockholders.

PICO has also formulated a settlement plan with its general, unsecured creditors. A majority of these creditors (in both number and amount of claim) accepted an Amended Plan of Arrangement (the Plan) in January 1978. The Plan divides the creditors into two classes, one of which receives cash and the other a combination of preferred stock, common stock, and warrants to purchase common stock. The Plan also requires PICO to conduct a stockholders' meeting for the purpose, inter alia, of amending the certificate of incorporation to implement the Plan and the Lender Agreement. The bankruptcy court confirmed this proposed arrangement on May 11, 1978, and scheduled for July 31, 1978, a shareholders' meeting to consider the Plan and Agreement.

Appellant Potter, owner of approximately 45% of PICO's outstanding stock and until recently an officer and chairman of the board of directors, individually affirmed and ratified the Lender Agreement in consideration for a release of his personal guarantee of a portion of the corporate debt. In particular, Potter agreed to the following terms:

> In consideration of this agreement, John T. Potter agrees to vote his stock of PICO or any of its subsidiaries in favor of the acceptance of this Settlement Agreement at any meeting of stockholders of any of said corporations and agrees to support same in any application brought before the Bankruptcy Court in connection therewith. By signing his consent at the foot of this Agreement, John T. Potter hereby confirms and acknowledges his agreement to be bound by the terms of this paragraph.

In a separate agreement dated May 31, 1974, Potter and the secured lenders had entered a Guarantee of Liability and Security Agreement whereby Potter pledged to the lenders his shares of PICO stock. The bankruptcy court found that Potter was in

default of that Guarantee Agreement, entitling the lenders to treat the pledged shares as owners and to vote the shares as they choose.

On May 30, 1978, Bankruptcy Judge Rudin denied appellant's application to transfer the bankruptcy proceedings from Chapter XI to Chapter X. By order dated June 1, 1978, Judge Rudin granted, over appellant's objection, PICO's application for an order directing Potter to deliver to it a proxy authorizing the voting of his shares for the Lender Agreement and Plan. And on June 6, 1978, Judge Rudin denied appellant's application for an order compelling PICO to conduct a special shareholder meeting to elect a new board of directors. The district court affirmed these three orders in its decisions of July 20 and July 25, 1978. This appeal followed.

## I. TRANSFER FROM CHAPTER XI TO CHAPTER X

Appellant argues that because the plan of arrangement favors management and reduces the stockholders' interest in PICO, the bankruptcy court did not have jurisdiction to proceed under Chapter XI. Appellant relies upon *SEC v. American Trailer Rentals Co.,* 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965); *General Stores Corp. v. Shlensky,* 350 U.S. 462, 76 S.Ct. 516, 100 L.Ed. 550 (1956); and *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940), three cases in which the Supreme Court held that initial Chapter XI proceedings were best concluded in Chapter X. He argues that management's failure to call a stockholders' meeting for four years indicates a disregard of PICO's public shareholders.

We are not persuaded by appellant's argument. The cases upon which he relies hold that Chapter X is generally the appropriate proceeding where publicly held debt is to be adjusted or

where the debtor has widespread public stockholders and the protections of the public and private interests involved afforded by Chapter X are required because, for example, there is evidence of management misdeeds for which an accounting might be made, there is a need for new management, or the financial condition of the debtor requires more than a simple composition of its unsecured debts.

*American Trailer Rentals, supra,* 379 U.S. at 615, 85 S.Ct. at 524. Because this case does not involve the adjustment of public debt, appellant must show that Chapter X protections are necessary under this standard. But the careful opinion of the district court convincingly shows the propriety of continuing this proceeding in Chapter XI rather than Chapter X. It relies, quite properly, on the bankruptcy judge's point that although the issuance of new stock to fund the plan of arrangement will water down present stock interests by 67% it will preserve the company as a viable one, avoiding liquidation that would make the stock (as well as unsecured creditors' claims) worthless. Conceding that the present case requires "more than a simple composition of . . . unsecured debts," the court nevertheless pointed out that the Plan proposed a settlement of private and not public debt; "hence the essential purpose of Chapter X—to protect the public investor—is inapplicable." The court found that there was no credible evidence of management misconduct requiring the appointment of an independent trustee and notes that the plan provides for new directors to be elected nine to eighteen months after confirmation. And the court found that if the proceeding were transferred to Chapter X, liquidation would probably ensue because the institutional lenders have threatened under any such scheme to enforce PICO's default of its compromise with them. The court also noted that the Securities Exchange Commission has taken no position on the motion to transfer[1] and that

1. The Commission's silence is significant because the Commission has more complete rights and responsibilities to participate in a

Chapter X proceeding than in a Chapter XI proceeding, *see SEC v. American Trailer Rentals Co.,* 379 U.S. 594, 604–07, 85 S.Ct. 513, 13

the stockholders would in all likelihood be barred from participation in a Chapter X plan. *See Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939); 6A *Collier on Bankruptcy* ¶¶ 10.11, 10.12 (14th ed. 1977) (interpreting § 216(8) of Bankruptcy Act, 11 U.S.C. § 616(8)).

We are satisfied that the district court's findings are soundly based and that they justify the decision not to transfer the proceeding or to treat the case as ousted of Chapter XI jurisdiction. A recent decision in this circuit is instructive. In *In re Alrac Corp.,* 550 F.2d 1314 (2d Cir. 1977), we affirmed the denial of a motion to transfer Chapter XI proceedings to Chapter X notwithstanding the arrangement's readjustment of publicly held equity *and* debt. We relied in part on the danger that the debtor would not survive the rigors of Chapter X. Here, there is a similar danger, and because no public debt exists there is even less reason than there was in *Alrac* to transfer this proceeding. We therefore affirm the district court's order denying the motion to transfer.

## II. ELECTION OF THE BOARD OF DIRECTORS

Appellant contends that he has an "inherent" right as a stockholder and, as an owner of 25% or more of the stock, a specific power under PICO's by-laws, to demand a special meeting of the stockholders to elect a new board of directors, at least where there has been no stockholders' meeting for four years. The bankruptcy court and the district court rejected this contention on the ground, *inter alia,* that such a special meeting would preclude confirmation of the Plan and thereby jeopardize the rehabilitation of PICO. The bankruptcy court noted that Potter must shoulder some blame for PICO's collapse; that he had entered into a consent decree on March 9, 1977, with the SEC limiting his PICO activities and his

management of the corporation and requiring him not to vote his PICO stock against any action recommended by a majority of the board of directors; and that he had pleaded nolo contendere to charges of filing improper income tax returns. The court concluded:

> Here, we have a situation of a disgruntled stockholder who is frustrated in his efforts to smash the Companies which he brought into being because he has been ousted from management and control.
>
> . . . . .
>
> [T]o permit Potter to control the Debtors through the election of a majority of the Board of Directors would sound the death knell to the Debtors. His objection to the issuance of stock to secured and unsecured creditors would require an Amended Plan, new notice to creditors and new acceptances solicited. There is no showing that interested parties would approve a plan without the issuance of stock.
>
> It is to be noted that John T. Potter as Debtor in Possession has not complied with orders of this Court. At this time, in view of what has been said of him, it is doubtful that this Court would approve control, directly or indirectly, of the Debtors by John T. Potter.

Appellant does not dispute the bankruptcy judge's findings, and we believe that those findings support his conclusion that the holding of a special election might jeopardize PICO's rehabilitation.

 It is a truism that a bankruptcy court acting under Chapter XI, as well as under Chapter X or in straight bankruptcy, possesses the powers of a court of equity. *See SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); *In re Chanticleer Associates,* 592 F.2d 70, 73–74 (2d Cir. 1979) (Ch. XII); *In re Stirling Homex Corp.,* 591 F.2d 148, 155–156 (2d Cir. 1978) (Ch. X); §§ 2a and 2a(15) of the Bankrupt-

---

L.Ed.2d 510 (1965). Consequently, if the protections of Chapter X were important here, one might expect the Commission to urge a transfer. We have recognized the relevance of the

Commission's position to the propriety of a transfer. *In re Alrac Corp.,* 550 F.2d 1314, 1319 (2d Cir. 1977).

cy Act, 11 U.S.C. §§ 11(a) and 11(a)(15); 28 U.S.C. § 1651; 8 *Collier on Bankruptcy* ¶ 3.20 at 232–33 and ¶ 3.23 at 263–64 (14th ed. 1978). Of course a bankruptcy court should not lightly employ its equitable power to block an election of a new board of directors. (Although § 191 of Chapter X, 11 U.S.C. § 591, requires the court to approve any change of officers or directors in the debtor corporation, Chapter XI contains no such provision.) This circuit has described the equitable power of the bankruptcy court in connection with the rights of stockholders to elect directors as follows:

> [T]he right of the majority of stockholders to be represented by directors of their own choice and thus to control corporate policy is paramount and will not be disturbed unless a clear case of abuse is made out. This has been the rule all along in equity receivership, in ordinary bankruptcy and in proceedings for reorganization under former section 77B of the Bankruptcy Act [the antecedent of Chapter X] . . . [With respect to their choice of the type of reorganization plan,] the stockholders are entitled to elect directors who will abide by their wishes, provided of course the directors chosen are not persons who will injure the honest and efficient management of the corporate property.

*In re J. P. Linahan, Inc.*, 111 F.2d 590, 592 (2d Cir. 1940) (citations omitted).[2] *See 6 Collier on Bankruptcy* ¶ 8.15 (14th ed. 1978). Under this standard, the bankruptcy court and the district court were justified in denying appellant's petition for a special meeting to elect new directors in view of the finding that such an election might result in unsatisfactory management and would probably jeopardize both PICO's rehabilitation and the rights of creditors and stockholders—sounding the "death knell" to the debtor as well as to appellant himself.[3]

## III. ORDER TO DELIVER PROXY

 Appellant objects to the bankruptcy court order, affirmed by the district court, directing him and/or Marine Midland Bank (pledgee of his stock) to deliver to PICO a proxy empowering PICO to vote his shares of stock in favor of the issuance of stock and other conditions required by the Lender Agreement and the Plan of Arrangement. We find his objections without merit.

The bankruptcy court has jurisdiction over appellant's shares of PICO stock because both PICO and the appellant personally are debtors-in-possession in an ongoing Chapter XI proceeding. *See* Bankruptcy Act § 311, 11 U.S.C. § 711. A debtor-in-possession's title and powers are "subject . . . at all times to the control of the court and to such limitations, restrictions, terms, and conditions as the court may from time to time prescribe." Bankruptcy Act § 342, 11 U.S.C. § 742. Here, if appellant's PICO stock is not voted in favor of the Plan of Arrangement, not only will PICO be forced to liquidate, but his personal estate will be adjudicated bankrupt because a waiver of his personal guarantee of PICO's debt is dependent upon confirmation of the Plan. Under these circumstances, the bankruptcy court was well within its discretion to require appellant to execute a proxy to ensure the survival of both PICO and appellant's estate.[4]

---

**2.** The proceeding in *In re J. P. Linahan, Inc.*, 111 F.2d 590 (2d Cir. 1940), was filed in Chapter X, not Chapter XI. The case is nevertheless of precedential value because it describes the equitable power of a bankruptcy court in general terms. The court stated that that general rule was only slightly modified by § 191 of Chapter X; in the ordinary case, the court reasoned, § 191 empowers a court to veto the selection of officers and directors only *after* the stockholders have elected them. *Id.* at 591–92.

**3.** We need not reach the additional question whether res judicata bars appellant from asserting this claim in view of the dismissal of a cause of action against the same parties seeking the same relief before Bankruptcy Judge Rudin, a dismissal which was with prejudice.

**4.** Although there was no directors' resolution seeking the proxy here in question, we believe that the company president had the prerogative to seek such a proxy. *See Fischer v. Maloney,* 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978). And although PICO is restrained by a consent decree from soliciting proxies "in contravention of Section 14(a) of the Exchange Act and the rules and regulations promulgated

476

The orders of the district court are affirmed.

thereunder," there is no indication that seeking the proxy to vote appellant's shares was or is in any manner, shape, or form a solicitation in contravention of the proxy rules.