CUDAHY, Circuit Judge.
 

 In January 1983 Gaslight Club, Inc. (“Gaslight”) and seven affiliated corporations
 
 [1]
 
 filed voluntary petitions in the Bankruptcy Court for reorganization under Chapter 11 of the Bankruptcy Code. Gaslight operated private dining and drinking clubs in various cities throughout the United States. Robert Fredricks, president and majority shareholder of Gaslight, was designated by the court as the person entitled
 
 *769
 
 to exercise the rights and perform the obligations of Gaslight as debtor in possession.
 
 [2]
 

 See
 
 11 U.S.C. §§ 1107, 1108. An order was also entered permitting Gaslight to retain Malcolm Gaynor and David Miss-ner of Schwartz, Cooper, Kolb & Gaynor, Chartered, and Norman Hanfling of Norman Hanfling and Associates as its attorneys. Hanfling had enjoyed a close professional relationship with Gaslight and Fre-dricks for many years. Missner was recommended by Hanfling. A committee of creditors (the “Committee”) was appointed,
 
 see
 
 11 U.S.C. §§ 1102, 151102, and the court authorized the Committee to retain Daniel Zazove as its attorney.
 

 In May 1983 the Committee filed a motion seeking the sale of the debtor’s property because Gaslight was sustaining operating losses under Fredricks’ control. In fact, Gaslight sustained a pre-tax operating loss of $1.6 million in the first eight months of 1983, while Fredricks was in control of the debtor in possession. In July an order was entered requiring the listing and/or sale of the debtor’s excess real estate and personal property and further requiring the debtor to file a plan by August 14, 1983.
 

 On August 30, 1983, Fredricks had not filed a plan and the Committee requested an order designating William Brandt, Jr. to operate Gaslight and to exercise its debtor in possession powers. Fredricks consented to the appointment of Brandt. Fredricks had met at length with Missner and Han-fling concerning the proposed redesig-nation, and had been advised that it was in his own best interest and in the best interest of Gaslight. He was also advised that he would remain president of Gaslight under Brandt’s supervision. Fredricks also met with an independent bankruptcy attorney, Avrum Dannen. Although the United States trustee initially objected to the order, it ultimately supported the motion and agreed that its authority was not being usurped. The order was entered on August 30. It ordered Brandt to “perform the duties imposed upon the debtors by the applicable provisions of the Bankruptcy Code” and gave him “full and exclusive power ... to employ [and] discharge ... all managers, officers, directors, agents, employees and servants of the debtors, as he may deem necessary and advisable....” Brandt continued to employ Missner and his firm to represent Gaslight.
 

 Within a month after his appointment, Brandt discharged Fredricks from his position as president. The bankruptcy court stated that this action was taken because Fredricks was not performing any active role in the corporation. There was also testimony that Fredricks had refused to recognize Brandt’s authority. Further, there was testimony that Fredricks had been secretly paying himself interest on a pre-petition unsecured loan and that he had refused to repay the money to the estate.
 

 On October 17, 1983, Louis Levit, of the law firm of Levit & Mason, Ltd., filed a motion to be substituted as attorney
 
 [3]
 
 for the debtor in possession.
 
 [4]
 
 Shortly thereafter Fredricks filed a motion, through John McCarthy and Harold Fein, his individual counsel, to appoint a trustee or in the alternative to vacate the order appointing Brandt so that Fredricks could regain control of Gaslight.
 

 Fredricks claimed that his consent to the designation of Brandt had not been informed. Beginning in June or July 1983, Hanfling engaged in a series of negotiations in an attempt to acquire Gaslight for a syndicate organized by him and in which he was a substantial investor. Hanfling voluntarily withdrew as counsel for the
 
 *770
 
 debtor in possession in September 1983. Fredricks testified that he did not know of Hanfling’s interest in acquiring Gaslight when he consented to Brandt’s appointment, and that if he had known of Han-fling’s interest he would not have taken his advice to consent to the designation of Brandt. Hanfling testified that Fredricks had consented to Hanfling’s involvement with an investment group pursuant to an agreement that Fredricks would receive $50,000 per year for four or five years as a consulting fee.
 

 The bankruptcy court found that Fre-dricks was aware of Hanfling’s involvement prior to the August 30 order. Therefore the motion to appoint a trustee or to reappoint Fredricks was denied. The bankruptcy court found that
 

 Fredricks’ only motive for seeking the appointment of trustee is to threaten the Debtors and creditors with the consequences of not agreeing to his redesig-nation as person in control of the Debtors. Such motivation is an improper basis for a motion to appoint a trustee and borders on an abuse of the court. In fact, Fredricks’ counsel has admitted in open court that while Fredricks wants to return to management and control of Gaslight “Mr. Fredricks cannot go back in. It would be improper.”
 

 The bankruptcy court also held that because Brandt had exclusive authority to employ agents of the debtor, the motion to substitute counsel must be denied. The district court held that the bankruptcy court did not err in denying these motions.
 

 I.
 

 Fredricks’ first argument is that the bankruptcy court had no authority to enter the August 30 order, replacing Fredricks with Brandt, and that such an order is an improper circumvention of the statutory procedures for appointing a trustee.
 
 [5]
 
 We agree with the district court that, on the very special facts of this case, the bankruptcy court’s order was appropriate and authorized by the statute.
 

 The Bankruptcy Code authorizes the bankruptcy court to “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” 11 U.S.C. § 105(a). Further, it states that the rights and powers of a debtor in possession are subject “to such limitations or conditions as the court prescribes.” 11 U.S.C. § 1107(a).
 
 [6]
 
 The case law demonstrates that the court has considerable authority to interfere with the management of a debtor corporation in order to protect the creditors’ interests.
 
 [7]
 
 In
 
 *771
 

 In re Lifeguard Industries, Inc.,
 
 37 B.R. 3 (Bankr.S.D.Ohio 1983), the court held that a majority shareholder would not be permitted to install a new management slate when the new management had demonstrated no real understanding of the business or of the problems facing the business. Further, in
 
 Lifeguard Industries
 
 the board of directors was ordered not to interfere with the day-to-day operations of the corporation. The court stated: “It
 
 is
 
 this Court’s responsibility to protect creditors’ interests from the actions of inexperienced, incapable, or foolhardy management, whether old or new.” 37 B.R. at 17 (emphasis in original). In
 
 In re Potter Instrument Co.,
 
 593 F.2d 470 (2d Cir.1979), the court held that the bankruptcy court was justified in denying the majority shareholder’s petition, under the corporate bylaws, for a special meeting to elect new directors because “such an election might result in unsatisfactory management and would probably jeopardize both PICO’s rehabilitation and the rights of creditors and stockholders_” 593 F.2d at 475.
 

 Sections 105(a) and 1107(a) of the Bankruptcy Code provide adequate authority for the bankruptcy court to approve the replacement of the person designated to perform the duties and exercise the right' of the debtor in possession if the creditors’ committee, the person presently in control and the majority and controlling shareholder of the debtor agree to this course of action. Of course such consent may be conditioned upon the inclusion of whatever provisions in the court’s order the various parties may demand. Had Fredricks resigned his position, he almost certainly could have exercised his prerogatives as majority and controlling shareholder to replace himself as a corporate officer with a nominee of his own choice and the bankruptcy court could then have designated Fredricks’ replacement as the person enti-tied to exercise the rights and obligations of the debtor in possession. Fredricks could also have named someone as a chief executive officer exercising ultimate control while leaving himself as president.
 
 See
 
 Bankruptcy Rule 9001(5)(A). The bankruptcy court’s order here achieved the same result more directly. Because of Fre-dricks’ consent to the designation of Brandt as the person in ultimate control, there was no need in this case to appoint a trustee. The United States trustee now agrees that the statutory provisions for appointment of a trustee were not improperly circumvented.
 

 In re Boileau,
 
 736 F.2d 503 (9th Cir. 1984), implicitly approves such orders. In
 
 Boileau
 
 the creditors’ committee had agreed to drop its motion for the appointment of a trustee if the debtor was removed entirely from business management and operations and an examiner with expanded powers was appointed. The debtor had consented and an appropriate order had been entered. The court held that the debtor no longer performed the functions of a debtor in possession and that the examiner, who was empowered to perform a myriad of functions normally carried out by a trustee, had authority to waive the attorney-client privilege.
 

 Further, although not squarely on point,
 
 In re FSC Corp.,
 
 38 B.R. 346 (Bankr.W.D. Penn.1983), supports our conclusion. FSC had no officers or any board of directors when it filed for bankruptcy. Hence the bankruptcy court appointed a “Responsible Officer” for the debtor in possession to perform the duties of the debtor. In a later order the court authorized him to vote the shares of the debtor’s subsidiaries, to elect directors and to take other actions on behalf of shareholders. The later order was challenged and subsequently upheld by the court. The court said,
 
 inter alia,
 
 that “unless a trustee has been appointed,
 
 *772
 
 the Bankruptcy Code does not affect the applicability of the corporation law of debt- or’s state of incorporation as it relates to management of the corporation,” but concluded that sections 226 and 303 of Delaware Corporation Law
 
 [8]
 
 permitted the order. 38 B.R. at 349-50. Further, the court was satisfied that the grant of authority to the Responsible Officer was contemplated by sections 1107(a) and 105 of the Bankruptcy Code.
 
 See
 
 38 B.R. at 350.
 

 Fredricks argues that
 
 FSC
 
 is distinguishable because the debtor in
 
 FSC
 
 had no officers or directors when the petition was filed. Although we recognize this factual difference, we agree with the district court that
 
 FSC
 
 is still sufficiently analogous because when Fredricks consented to be replaced by Brandt as the person in control, a vacancy was in effect
 
 created.
 
 Fredricks also argues that the court in
 
 FSC
 
 “acted, not under any presumed authority in the Bankruptcy Code, but pursuant to a Delaware statute which applies only when vacancies have occurred and when the shareholders are so divided that they cannot elect successors!” Appellants’ Brief at 16-17. First, we note that the
 
 FSC
 
 court relied on the Bankruptcy Code, as well as on Delaware law.
 
 [9]
 
 Second, although appellants’ comment adequately describes section 226 of the Delaware Corporation Law, it ignores section 303, upon which the
 
 FSC
 
 court also relied. Section 303 seems to address the situation before us now. Frederick also claims that “there was no applicable state statute involved [sic] by the court in this case which was in any way analogous to the Delaware statute relied on in
 
 FSC.”
 
 Appellants’ Brief at 17. This contention may be wide of the mark. Gaslight Club, Inc. is a Delaware corporation
 
 [10]
 
 and hence section 303 of the Delaware Corporation Law is potentially as applicable to Gaslight as it was to FSC.
 

 Fredricks continues to argue that designating someone, such as Brandt, as a person in control (virtually in lieu of a trustee) improperly avoids the statutory requirements for appointment of a trustee. We would certainly question recourse to the present procedure as a means generally to avoid appointment of a trustee. But we think the peculiar circumstances ,of the case before us as well as the consent on all sides to the procedure followed make this case different. The appointment of Brandt was appropriate to the circumstances and authorized by law.
 

 In re Martin,
 
 26 B.R. 39 (Bankr.S.D.W. Va.1982), is not to the contrary. That case
 
 *773
 
 involved the requested designation of a widow as “successor” to her deceased husband, who had been debtor in possession. It was not a corporate situation involving corporate control, and, more importantly, the person to be replaced (who was dead) did not join in the request for replacement. Further, in this case Brandt was not a “successor” debtor in possession. The debtor in possession was, and remained, Gaslight. The only issue was who was to exercise the rights of the debtor in possession, which, since it was a corporation, obviously needed to act through an individual. Hence we believe
 
 Martin
 
 is quite distinguishable.
 

 In re Harper Industries, Inc.,
 
 18 B.R. 773 (Bankr.S.D.Ohio 1982), cited by Fre-dricks, is also distinguishable. In
 
 Harper
 
 the court had entered an order, by consent of the parties, permitting the use of cash collateral. The order included a paragraph stating that the responsibility for accounting and control of funds and accounts receivable would be in the exclusive control of the current corporate controller, Kenneth Levin, and that the corporate responsibility for other phases of management would be in the exclusive control of Harper’s president, Henry Tucker. Subsequently the board of directors replaced Levin and Tucker, and sought to modify the cash collateral order. The court held that the order did not affect the general right and authority of the Board to run the business. “Replacement of management remains the prerogative of the board of directors (and ultimately the stockholders), and unless impeded by a court order initiated by action of its creditors ... the Board is free to exercise that prerogative.” 18 B.R. at 775. Because several of the parties to the order had withdrawn their consent, the order was held to be no longer in force.
 

 The case before us is distinguishable because here a court order initiated by Gaslight’s creditors did restrict the Board’s right to replace management. The order in
 
 Harper
 
 did not appoint new management to run the business. Further, there is no indication in the instant case that the order was predicated on the continuing consent of the parties. In fact, we rather doubt that the creditors would have consented to the order if it was clear that Fredricks retained the power to effectively vacate it at any time.
 

 II.
 

 In a related argument, Fredricks contends that the order refusing to appoint a trustee to replace Brandt, or in the alternative to vacate the August 30 order, is illegal because Fredricks’ consent to the August 30 order was not fully informed.
 
 [11]
 
 As noted, Hanfling testified that Fredricks was fully advised of the consequences of Brandt’s appointment and about Hanfling’s role in the investment group. The bankruptcy court believed Hanfling and so found. The district court did not conclude that this factual finding was clearly erroneous, nor do we.
 
 See In re Kimzey,
 
 761 F.2d 421, 423 (7th Cir.1985). The bankruptcy court is in the best position to weigh the credibility of Hanfling and of Fredricks.
 

 Further, the bankruptcy court did not err in refusing to appoint a trustee to replace
 
 *774
 
 Brandt. The bankruptcy court found that appointment of a trustee was not in the interests of creditors, any security holders or the estate generally. The district court agreed that no credible evidence had been presented demonstrating a need for the appointment of a trustee. Evidence of mismanagement by Fredricks cannot be used to justify the replacement of Brandt with a trustee. We do not think that the courts below erred in this determination.
 

 III.
 

 Fredricks also argues that the board of directors should have been permitted to retain counsel of its choice. The bankruptcy court and the district court both concluded that under the facts in this case, the power to retain counsel resided in Brandt, subject to the court’s approval. Section 327 of the Bankruptcy Code provides:
 

 (a) Except as otherwise provided in this section, the trustee, with the court’s approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee’s duties under this title.
 

 11 U.S.C. § 327(a). Section 1107 provides that “a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.” 11 U.S.C. § 1107(a).
 
 [12]
 
 Hence Gaslight, the debtor in possession, had the power to retain counsel, subject to the court’s approval. Brandt was the person designated to exercise the rights of the debtor in possession and hence he — not the board of directors — had the power to retain counsel. The August 30 order explicitly gave Brandt the full and exclusive power to employ all agents and employees of the debtors.
 
 Cf. In re Boileau,
 
 736 F.2d 503 (9th Cir.1984) (when examiner with expanded powers was appointed by stipulation of the parties to avoid appointment of a trustee, the examiner, not the former management of debtor, had authority to waive the attorney-client privilege).
 

 We therefore affirm the judgment of the district court.
 

 [1]
 

 . All of these corporations will be collectively referred to as "Gaslight."
 

 [2]
 

 . 11 U.S.C. § 1101(1) states that "‘debtor in possession’ means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case.”
 

 [3]
 

 . Fredricks had paid Levit & Mason a retainer of $15,000.
 

 [4]
 

 .Fredricks is Chairman of the Board of Gaslight. The other members are Harold Fein, Fredricks’ personal attorney, Stanley Kusper and Lew Hill, all of whom serve at Fredricks’ pleasure. On October 7, 1983, Gaslight's Board of Directors, acting on Fredricks’ recommendation, had authorized Gaslight to retain Levit & Mason.
 

 [5]
 

 . The Bankruptcy Code provides:
 

 (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
 

 (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
 

 (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.
 

 11 U.S.C. § 151104(a);
 
 see abo
 
 11 U.S.C. § 1104.
 

 [6]
 

 . Rule 9001(5) of the Bankruptcy Code may also offer some support to the extent that it anticipates that a person performing the duties of debtor in possession need not be an officer, director or controlling shareholder.
 

 When any act is required by these rules to be performed by a debtor ... (A) if the debtor is a corporation, “debtor" includes, if designated by the court, any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member,
 
 or any other person in control....
 

 Bankruptcy Rule 9001(5) (emphasis supplied);
 
 cf. In re Ron San Realty Co.,
 
 457 F.Supp. 994 (S.D.N.Y.1978) (person could be designated by court to perform duties imposed on “person in control” even though he had never been an officer, director or employee, or had any formal relationship with debtor).
 

 [7]
 

 .We of course recognize
 

 the right of the majority of stockholders to be represented by directors of their own choice and thus to control corporate policy is paramount and will not be disturbed unless a
 
 *771
 
 clear case of abuse is made out.... [T]he stockholders are entitled to elect directors who will abide by their wishes, provided of course the directors chosen are not persons who will injure the honest and efficient management of the corporate property.
 

 In re Potter Instrument Co.,
 
 593 F.2d 470, 475 (2d Cir.1979) (quoting
 
 In re J.P. Linahan, Inc.,
 
 111 F.2d 590, 592 (2d Cir.1940) (citations omitted)).
 

 [8]
 

 .Section 226 deals with the appointment of a custodian or receiver for a corporation when the shareholders are unable to elect directors or when the directors are deadlocked concerning the management of the corporation. Section 303 provides:
 

 (a) Any corporation of this State, a plan of reorganization of which pursuant to the provisions of any applicable statute of the United States relating to reorganizations of corporations, has been or shall be confirmed by the decree or order of a court of competent jurisdiction, may put into effect and carry out the plan and the decrees and orders of the court or judge relative thereto and may take any proceeding and do any act provided in the plan or directed by such decrees and orders, without further action by its directors or stockholders. Such power and authority may be exercised, and such proceedings and acts may be taken, as may be directed by such decrees or orders, by the trustee or trustees of such corporation appointed in the reorganization proceedings (or a majority thereof), or if none be appointed and acting, by designated officers of the corporation, or by a master or other representative appointed by the court or judge, with like effect as if exercised and taken by unanimous action of the directors and stockholders of the corporation.
 

 (b) Such corporation may, in the manner provided in subsection (a) of this section, but without limiting the generality or effect of the foregoing alter, amend, or repeal its by-laws; constitute or reconstitute and classify or reclassify its board of directors, and name, constitute or appoint directors and officers in place of or in addition to all or some of the directors or officers then in office....
 

 [9]
 

 . Further it is not clear whether the Delaware statutes cited by the court in
 
 FSC
 
 were necessary to uphold the first order, appointing the Responsible Officer, or whether they were necessary only to uphold the later order, authorizing him to vote the shares. No appeal was taken from the first order.
 

 [10]
 

 . Each of the seven corporations affiliated with Gaslight Clubs, Inc. are incorporated in either New York, Illinois, Washington, D.C., or Florida.
 

 [11]
 

 . Fredricks also argues that the order should be vacated because the bankruptcy judge was misled on two vital points. First, Fredricks refers to Missner’s statement to the judge that
 

 There is no change of — in the status of the debtor in possession. Mr. Fredericks [sic] is going to continue to be employed by the Gaslight and continue to give valuable advice. The only question is, and I think the import of this order is, who is going to make the final decisions on things, the Creditors’ Committee wants Mr. Brandt to do it_
 

 Tr. 8/30/83, p. 9. Fredricks argues that the judge was misled because Brandt fired Fre-dricks. We do not think the judge was misled. Missner’s own statement recognizes that Brandt would be making the final decisions. Further, the order clearly stated that Brandt would have the authority to fire all officers, and no exception was made for Fredricks. Second, Fre-dricks argues that the judge was misled because he believed that Fredricks’ consent was informed. Because we also conclude that Fre-dricks’ consent was informed, we need not address this argument. Further, Fredricks’ failure to inform the judge of Hanflings' self-dealing cannot now be used by Fredricks to justify the revocation of his consent.
 

 [12]
 

 . Section 1107 provides:
 

 (b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.
 

 11 U.S.C. § 1107(b). Hence the fact that Miss-ner had previously been employed by Gaslight did not preclude him from serving as an attorney for the debtor in possession.