**In re GROUP V PARTNERSHIP, an
Illinois limited partnership, et al.**

No. 86 C 5395.

United States District Court,
N.D. Illinois, E.D.

April 9, 1987.

Nicholas G. Dozoryst II, David K. Welch, Tony R. Zimmerman, Dozoryst, Brustein, Neuman & Marks, Chicago, Ill., for appellant.

Arthur G. Jaros, Jr., Richter & Jaros, Oak Brook, Ill., for appellee.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Group V Partnership ("Group V") is an Illinois limited partnership engaged in the business of owning single family homes for investment purposes and renting those homes to the public. Its original general partners were Douglas H. Scott, Richard E. Scott, Douglas W. Scott and IRE, Inc. After Group V and its four original general partners filed separate petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*, some of Group V's limited partners amended Group V's Articles of Limited Partnership to substitute Randall S. Jaros for the original general partners. The original general partners appeal from identical orders entered in all five Chapter 11 cases confirming Jaros as Group V's new sole general partner. They do not dispute that Group V's Articles of Limited Partnership allow limited partners to enact such an amendment. Instead, they argue that the orders must be reversed because the limited partners failed to follow proper procedures. The court disagrees, and the orders are affirmed.

Beginning on December 14, 1985, and continuing through January 8, 1986, limited partners holding over 83% of the partnership units signed the amendment. On January 24, 1986, copies of the amendment were delivered to the partners who had not signed, including the original general partners. Four more limited partners consented in writing to the amendment, bringing the number of partnership units consenting

to the amendment to approximately 89% of the total. By its terms, the amendment became effective on January 24, 1986, after all of the partners had been served with a copy executed by partners holding at least 75% of the outstanding partnership units.

On February 6, 1986, Jaros filed a motion before the bankruptcy judge to confirm his substitution as the new sole general partner and to compel the former general partners to turn over Group V's partnership records. On March 4, 1986, the original general partners filed separate motions for rule to show cause why Jaros and certain limited partners of Group V should not be held in contempt for expelling the general partners in violation of the automatic stay provision of the Bankruptcy Code. 11 U.S.C. § 362. After holding an evidentiary hearing the bankruptcy judge granted the motion by Jaros and denied the motion by Group V's original general partners on June 3, 1986. The original general partners filed this appeal after the bankruptcy judge denied their motion to alter the order on June 13, 1986.

■ The original general partners first argue that the bankruptcy judge improperly confirmed Jaros because Group V's Articles of Limited Partnership were not properly amended. They contend that section 17B of Group V's Articles of Limited Partnership [1] requires limited partners holding 10% or more of the partnership units to request in writing that the general partners cause a vote to be taken on matters covered in section 17A, including a change in Group V's general partners. The general partners' responsibilities in responding to such a request, such as scheduling the meeting and notifying the other partners, are specifically set forth in section 17E. The original general partners argue that this is the exclusive procedure for amending Group V's Articles, and it was not followed here. Instead, the proposed amendment was circulated among Group V's limited partners, most of whom signed it and waived notice of any meeting. Rather than requesting the general partners to cause a vote to be taken, the limited part-

ners presented them with a *fait accompli:* an amendment already approved by limited partners owning more than enough partnership units for the amendment to take effect. Alternatively, the original general partners argue that under section 17D they were entitled to prior notice of the proposed amendments, but they were given no notice at all until the day the amendment was effective.

The limited partners interpret section 17 rather differently. They observe that nothing in section 17 makes the meeting procedures mandatory or exclusive. In their view, limited partners holding 10% or more of the partnership units can force the general partners to convene a meeting and cause a vote to be taken on a proposed amendment, but if the limited partners can secure approval of the proposed amendment from limited partners holding 75% or more of the partnership units without holding a meeting, such a meeting need not be held. They further contend that giving prior notice of a proposed amendment to general partners is unnecessary under section 17D since that section refers only to an amendment, not a proposed amendment. According to the limited partners, all section 17D requires is that all partners be notified of an amendment before the amendment takes effect, and they complied with that requirement. In support of their interpretation of section 17 the limited partners rely heavily on section 17F, which requires that an expelled partner be notified in writing of his expulsion. They contend that section 17F would be superfluous if the general partners controlled the entire process leading to the expulsion.

We agree with the bankruptcy judge that section 17 is ambiguous. The original general partners offered no extrinsic evidence to support their interpretation of section 17, and the limited partners' offer to introduce evidence of prior amendments adopted without a meeting was rejected by the bankruptcy judge. Based on the language of section 17 alone, the limited partners' interpretation is persuasive. The original general partners' interpretation of section

---

**1.** Section 17 and the amendment are reproduced in the Appendix.

17 is not implausible, but they were responsible for drafting Group V's Articles of Limited Partnership, so any ambiguities must be construed against them. *See, e.g., Lippo v. Mobil Oil Corp.,* 776 F.2d 706, 714–15 & n. 15 (7th Cir.1985); *KFK Corp. v. American Continental Homes, Inc.,* 71 Ill.App.3d 304, 27 Ill.Dec. 420, 425, 389 N.E.2d 232, 237 (2d Dist.1979). We believe the bankruptcy judge properly interpreted section 17 in holding that Group V's limited partners complied with the Articles of Limited Partnership when they adopted the amendment expelling the original general partners.

The original general partners next argue that their post-petition expulsion violated 11 U.S.C. § 362(a)(3), which automatically stays

> any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

According to the original general partners, the amendment is void because it was executed before the automatic stay was lifted.

■ Whether the automatic stay provision applies to the action taken here is not entirely clear. *See In re Unit, Inc.,* 45 B.R. 425, 427 (Bankr.S.D.Ohio 1984) (suggesting, but not holding, that removal of general partners violated the automatic stay); *In re John J. Gilece, Jr.,* 1 B.R. 762, 765 (Bankr.E.D.Pa.1980) (holding that debtor's termination as corporation's president did not violate the automatic stay); *see also In re Minton Group, Inc.,* 46 B.R. 222 (S.D.N.Y.1985) (general partners' bankruptcy did not stay perfection of a mortgage on partnership property). But as noted above, the bankruptcy judge correctly concluded that the limited partners complied with Group V's Articles of Limited Partnership in expelling the former general partners and electing Jaros as Group V's new sole general partner. He also found that Jaros was qualified to act in that capacity. The latter finding is amply supported by the record and far from clearly erroneous. Under these circumstances, even if the automatic stay did apply, the bankruptcy judge had the authority to confirm Jaros as

Group V's general partner under 11 U.S.C. § 105(a), which authorizes "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See In re Gaslight Club, Inc.,* 782 F.2d 767, 770 & n. 7 (7th Cir.1986).

### Conclusion

The decision of the bankruptcy judge is affirmed.

### APPENDIX

17. VOTING AND OTHER RIGHTS OF THE LIMITED PARTNERS.

A. Limited Partners shall have the right to change by a seventy-five per cent majority affirmative vote of the units of the Partnership outstanding the following matters affecting the basic structure of the Partnership:

(1) Removal of a General Partner.

(2) Election of a successor General Partner.

(3) Termination and dissolution of the Partnership.

(4) Amendment of the Partnership Agreement, provided such amendment is not for the purpose of reflecting the addition or substitution of Limited Partners or the reduction of capital accounts upon the return of capital's Partners.

(5) The sale of all or substantially all of the assets of the Partnership in a single sale, or in multiple sales in the same 12–month period, except in a liquidation and winding up of the business of the Partnership upon its termination and dissolution.

(6) The pledge or encumbrance of all or substantially all of the assets of the Partnership at one time, other than in connection with the acquisition or improvement of assets, initial financing of a Partnership mortgage, or the refinancing of previous obligations; and

(7) The extension of the term of the Partnership.

B. Upon the written request of the Partners holding 10% or more of the units of the Partnership outstanding,

the General Partners will cause a vote to be taken on any item covered in paragraph 17(A) above.

C. A partner has the right to obtain a complete list of names and addresses of, and interest held by, all participants in the program upon written request to the general partner in payment of a reasonable cost.

D. No amendment to the partnership agreement affecting in any material respect the right or interests of the partners can be made without giving prior notice of such amendment to all the partners. Approval of the amendment requires an affirmative vote of a majority of the units of the Partnership outstanding.

E. Upon receipt of a written request from a partner either in person or by registered mail stating the purpose(s) of the meeting, the General Partners shall provide all Partners within ten days after the receipt of said request, written notice of a meeting and the purpose of such meeting to be held on a date not less than fifteen nor more than sixty days after receipt of said request, at a time and place convenient to the Partners.

F. Written notice of the expulsion of a General Partner shall be served upon him either by certified or by registered mail, return receipt requested, or by personal service. Such notice shall set forth the date upon which the expulsion is to become effective.

G. Upon retirement (which requires 90 days' prior written notice to the Limited Partners), expulsion, adjudication of bankruptcy of a General Partner, dissolution of a corporate General Partner or the insolvency or death of an individual General Partner ("Terminated Partner"), the interest of such Terminated Partner in the Profits and Losses, including the interest under paragraph 13D, shall be purchased by the Partnership for a purchase price determined according to the provisions of paragraph 17H, following.

H. The Terminated Partner shall receive from the Partnership the fair market value of his interest in the Partnership, determined by agreement between the Terminated Partner and the Partnership, or if they cannot agree, by arbitration in accordance with the then current rules of the American Arbitration Association. For this purpose, the fair market value of the interest of the Terminated Partner shall be deemed to be the amount the Terminated Partner would receive upon dissolution and termination of the Partnership under paragraph 24, assuming such dissolution or termination occurred on the date of the dissolving event specified in paragraph 17G and assuming the assets of the Partnership were sold for their then fair market value without compulsion of the Partnership to sell such assets. Payment shall be made by a promissory note bearing ten percent (10%) simple interest per annum on the unpaid principal amount of the promissory note with principal and all unpaid accrued interest subject to mandatory prepayment from all cash from sales or refinancing and the remaining unpaid principal balance and accrued interest on such promissory note due and payable five years from the date of the occurrence of an event specified in paragraph 23, provided, however, that if the Terminated Partner requests, to the extent required, the sale and payment shall be made on terms and conditions that will allow such sale to qualify for the installment method as provided in Section 453 of the Code.

I. Should a new General Partner be elected under paragraph 17A, such new General Partner ("Acquiring Partner") shall purchase from the Partnership, within 60 days of its election, the interest which the Partnership purchased from the Terminated Partner. For such interest the Acquiring Partner shall pay the amount determined pursuant to paragraph 17H to be the fair market value of such interest. Payment shall be made by a promissory note bearing ten per cent (10%) sim-

ple interest per annum on the unpaid principal amount of the promissory note secured by assignment by the Acquiring Partner to the Partnership of the future distributions by the Partnership to the Acquiring Partner, which principal amount together with accrued interest shall be paid at the times and in the amounts equal to seventy-five per cent (75%) of such distributions until such time as the principal amount together with accrued interest is paid in full, but shall become due and payable in full by the Acquiring Partner at such time as the Partnership is finally wound up and liquidated.

The amendment under which Jaros replaced the original general partners provides:

### AMENDMENT OF ARTICLES OF LIMITED PARTNERSHIP OF GROUP V PARTNERSHIP

Pursuant to Paragraph 17A.(1), (2) and (4) of the Group V Partnership Agreement, the Partnership Agreement is hereby amended as follows:

1) Paragraph 23B is amended by adding thereto the following sentence:

The term "Transfer of a General Partnership interest" does not include removal (expulsion) of a General Partner.

2) Douglas H. Scott, individually and as debtor-in-possession, Richard E. Scott, individually and as debtor-in-possession, Douglas W. Scott, individually and as debtor-in-possession and IRE, Inc., individually and as debtor-in-possession, are hereby removed as General Partners. This removal does not affect or involve any Limited Partnership interest held by one or more of the four aforementioned persons.

3) Randall S. Jaros is hereby [sic] elected as the sole new General Partner. The new General Partner shall proceed to act on behalf of the Partnership under paragraph 17H and shall comply with paragraph 17I.

This amendment shall take effect immediately upon the last of each partner having been served with a copy of this amendment executed by partners possession at least 75% of the outstanding units of partnership. Service shall be deemed to have occurred (a) when personally delivered to the last known residence or business address of the partner or (b) five (5) days after mailing by certified mail, return receipt requested, or (c) upon signing hereof if notice is indicated below as having been waived.