In re JOHNS–MANVILLE CORPORA-
TION et al., Nos. 82 B 11656
through 11676.

MANVILLE CORPORATION,
Plaintiff-Appellee,

v.

The EQUITY SECURITY HOLDERS
COMMITTEE, A.F. Investments and
Bankers National Life Insurance Com-
pany and Centerre Trust Company of
St. Louis and Clayton & Dubilier Inc.
and Leon B. Dubin and the Indepen-
dent Insurance Group, Inc. and Ber-
trand A. McKittrick and Shlomo Nuto-
vic and Raytheon Financial Corpora-
tion and Leonard Starobin (Starr) as
Members of the Equity Security Hold-
ers Committee, Defendants-Appellants,

Committee of Unsecured Creditors, Com-
mittee of Asbestos Health Related
Claimants and/or Creditors ("Asbestos
Health Committee"), Securities and Ex-
change Commission and Leon Silver-
man, the Legal Representative, Parties
in Interest.

No. 1522, Docket 86–5031.

United States Court of Appeals,
Second Circuit.

Argued June 12, 1986.

Decided Sept. 10, 1986.

George Hahn, New York City (Hahn and Hessen, New York City, of counsel), for defendant-appellant, The Equity Sec. Holders Committee.

Richard Kirby, Washington, D.C. (Daniel L. Goelzer, Paul Gonson, Jacob H. Stillman, Stephen M. DeTore and Batya Roth, S.E.C., Washington, D.C., of counsel), for plaintiff-appellee, S.E.C.

Michael Crames, New York City (Levin & Weintraub & Crames, New York City, of counsel), for plaintiff-appellee, Manville Corp.

Elihu Inselbuch, New York City (Gilbert, Segall & Young, New York City, of counsel), for plaintiff-appellee, Committee of Asbestos Health Related Claimants and/or Creditors.

Matthew Gluck, New York City (Fried, Frank, Harris, Shriver & Jacobson, New York City, of counsel), for plaintiff-appellee, The Legal Representative.

Before OAKES, ALTIMARI, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

This action, one segment in a long-running Chapter 11 reorganization proceeding, arose in consequence of the competing interests of creditors, stockholders, and the board of directors in the development of rehabilitation plans for appellee, the Manville Corporation ("Manville"), formerly Johns-Manville Corporation. Appellants are the Equity Security Holders Committee and individual members of that committee (collectively the "Equity Committee"), appointed by the bankruptcy court to represent the interests of stockholders in Manville's reorganization.[1] The Securities and Exchange Commission, although technically an appellee, shares the interests of the Equity Committee in the matter at hand.[2] Manville is aligned for purposes of this appeal with the Committee of Asbestos Health Related Claimants and/or Creditors (the "Asbestos Health Committee"), which represents the interests of the victims of diseases resulting from exposure to asbestos who have presently existing claims in tort against Manville, and with the Legal Representative, who represents the interests of future claimants who have not yet manifested such diseases.

The instant conflict arises in part because each of the committees representing

---

1. Section 1102(a)(2) of the Bankruptcy Code provides: "On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The court shall appoint any such committee." 11 U.S.C. § 1102(a)(2) (1982).

2. Although it has standing to be heard in the first instance, the Securities and Exchange Commission does not have standing to appeal. 11 U.S.C. § 1109(a) (1982). It may, however, participate in an appeal taken by a party in interest. H.R.Rep. No. 595, 95th Cong., 1st Sess. 404, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6360.

the various interests in Manville must depend upon the Manville board of directors to advance those interests in the bankruptcy court at this stage of the rehabilitation proceedings. As debtor, Manville had the exclusive right under the Bankruptcy Code to file rehabilitation plans for the first 120 days of reorganization, and the bankruptcy court in these proceedings has granted Manville several extensions prolonging its exclusive filing period. *See* 11 U.S.C. § 1121(b), (d) (1982 & Supp. III 1985). Therefore, although in theory each of the committees may one day have the opportunity to submit a rehabilitation plan to the bankruptcy court if Manville's own proposals are rejected or if a trustee is appointed to replace the Manville board, *see id.* § 1121(c), Manville has for three or four years enjoyed the exclusive right, after negotiating with the committees, to file proposed plans. And although any of the committees may decline to accept a plan submitted to the bankruptcy court for confirmation, the power to formulate such plans in the first instance or at least to exercise a voice in their formulation is clearly a desideratum under the program laid down by the Bankruptcy Code, because the bankruptcy court may confirm a plan with or without the acquiescence of all classes of claims. If any impaired class [3] rejects Manville's proposed plan, the court will nevertheless confirm it, upon Manville's request, so long as at least one impaired class has accepted the plan and so long as the court determines that the plan "does not discriminate unfairly" and is "fair and equitable" to each impaired class that has not accepted it. 11 U.S.C. § 1129(b)(1) (1982 & Supp. III 1985).

In order to channel negotiations toward acceptable plans, the various factions interested in Manville's rehabilitation have formed *ad hoc* alliances when the occasion has called for them. The challenge all the committees have faced is to fashion a plan that will preserve Manville's capacity to generate enough revenue to pay existing creditors, to cover its liabilities to present and future tort claimants where liability is certain though its precise extent is unknown, and to satisfy Manville's shareholders. The seemingly strange bedfellows in the instant litigation, Manville and the committees representing present and future tort claimants, have long struggled to devise a reorganization plan acceptable to each. Along the way they have at times been antagonists rather than allies. For example, the Asbestos Health Committee opposed Manville's first proposed plan, sanctioned by the Equity Committee and filed on November 21, 1983. Other disputes, such as the Asbestos Health Committee's initial refusal to represent future tort claimants, which led to litigation over the appointment of the Legal Representative, *see In re Johns-Manville Corp.,* 36 B.R. 743, 749 n. 3 (Bankr.S.D.N.Y.), *appeal denied,* 39 B.R. 234 (S.D.N.Y.1984), and the Asbestos Health Committee's motion to dismiss Manville's Chapter 11 petition, *see In re Johns-Manville Corp.,* 36 B.R. 727, 729–30 (Bankr.S.D.N.Y.), *appeal denied,* 39 B.R. 234 (S.D.N.Y.1984), which the Equity Committee opposed, also diverted the energies of all parties from negotiations that might earlier have led to an acceptable plan.

To their credit, Manville and the Legal Representative finally came to terms in August of 1985, formulating a plan that would earmark billions of dollars for payment to present and future asbestosis victims as well as to others damaged by the asbestos products that Manville once manufactured and sold. They have now received the blessing of the Asbestos Health Committee and apparently of the other creditor committees. Having reconciled their differences, however, they encountered opposition from the Equity Committee immediately following their breakthrough, on the eve of their submission of the plan to the bankruptcy court for confirmation. Under protest, the Equity Committee had been cut

---

**3.** With certain exceptions, impairment of claims or interests, defined at 11 U.S.C. § 1124 (1982 & Supp. II 1984), occurs when a plan alters the legal, equitable, or contractual rights of the claim or interest holder.

out of the negotiations that led to their plan, and if the product of Manville's new understanding with the tort claimants and other creditors is confirmed, equity may be diluted by 90% or more. *In re Johns-Manville Corp.*, 60 B.R. 842, 846 (S.D.N.Y. 1986). Displeased with that prospect, which the Equity Committee views as evidence of the Manville board's abdication of its responsibilities to the shareholders, the Equity Committee brought an action in Delaware state court seeking to compel Manville to hold a shareholders' meeting, pursuant to section 211(c) of Delaware's General Corporation Law.[4] The Equity Committee's avowed purpose was to replace Manville directors, so that new directors might reconsider submitting the proposed plan. 60 B.R. at 852 n. 20.

Manville countered with the instant action. At Manville's behest, the bankruptcy court issued an injunction prohibiting the Equity Committee from pursuing the Delaware action on the ground that the holding of a shareholders' meeting would obstruct Manville's reorganization. Denying the Equity Committee's motion for summary judgment, the bankruptcy court granted summary judgment to Manville *sua sponte*. *In re Johns-Manville Corp.*, 52 B.R. 879, 891 (Bankr.S.D.N.Y.1985). The district court affirmed. *In re Johns-Manville Corp.*, 60 B.R. 842 (S.D.N.Y.1986). On appeal, the Equity Committee argues that the district court erred in affirming the deci-

sion to enjoin, in affirming the grant of summary judgment to Manville, and in finding that the bankruptcy court had jurisdiction to issue the injunction.

### *Jurisdiction*

■ We turn first to the matter of the bankruptcy court's jurisdiction to issue the injunction. Injunctions are authorized under 11 U.S.C. § 105(a) (1982), which empowers the bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Code, including orders restraining actions pending elsewhere. *See In re Davis*, 730 F.2d 176, 183–84 (5th Cir.1984) ("[A] bankruptcy court is authorized, once jurisdiction is established, to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' This provision includes the authority to enjoin litigants from pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate."). Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established separately under 28 U.S.C. § 157 (Supp. II 1984)[5] 11 U.S.C. § 105(c) (Supp. III 1985).

■ The bankruptcy court relied for jurisdiction on section 157(b)(2)(A), finding that the request for an injunction in this case was a "core" proceeding, encompassing "[m]atters concerning the administra-

---

**4.** Del.Code Ann. tit. 8, § 211(c) (1983) provides that upon "a failure to hold the annual meeting ... for a period of 13 months ... after its last annual meeting, the Court of Chancery may summarily order a meeting to be held upon the application of any stockholder or director."

**5.** Section 157 provides in pertinent part:
(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
  *     *     *     *     *     *
(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
28 U.S.C. § 157 (Supp. II 1984).

tion of the estate." *In re Johns-Manville Corp.*, 52 B.R. 879, 890 (Bankr.S.D.N.Y. 1985). If, as the Equity Committee argues, Manville's action was not "core," the bankruptcy court had jurisdiction only to hear the complaint and then submit proposed findings of fact to the district court. An action brought to restrain interference resulting from proceedings in conflict with reorganization clearly may by its nature be core, however, since it will likely affect the administration of the estate. *See In re Lion Capital Group*, 46 B.R. 850, 854–55 (Bankr.S.D.N.Y.1985) ("Since the stay of defendants from pursuing their actions in the district court is grounded on the harm to efficient administration of the debtor's estate that would likely occur absent a stay, the motion seeking such relief is undoubtedly a core proceeding within the meaning of the statute."). And in our view, if the bankruptcy court may ever use its equitable powers under section 105(a) to enjoin actions pursued in other courts as "concerning the administration of the estate" under section 157(b)(2)(A), it may exercise that power where there is a basis for concluding that rehabilitation, the very purpose for the bankruptcy proceedings, might be undone by the other action. We therefore conclude that the bankruptcy court had jurisdiction to issue the injunction.

### The Injunction and the Grant of Summary Judgment

Turning, then, to the decision to enjoin, we first encounter the well-settled rule that the right to compel a shareholders' meeting for the purpose of electing a new board subsists during reorganization proceedings. *See In re Bush Terminal Co.*, 78 F.2d 662, 664 (2d Cir.1935); *In re Saxon Industries*, 39 B.R. 49, 50 (Bankr.S.D.N.Y.1984); *In re Lionel Corp.*, 30 B.R. 327, 330 (Bankr.S.D. N.Y.1983). As a consequence of the shareholders' right to govern their corporation, a prerogative ordinarily uncompromised by reorganization, "a bankruptcy court should not lightly employ its equitable power to block an election of a new board of directors." *In re Potter Instrument Co.*, 593 F.2d 470, 475 (2d Cir.1979). In accord-

ance with this rule, the parties and the lower courts agree that the Equity Committee's right to call a meeting may be impaired only if the Equity Committee is guilty of "clear abuse" in attempting to call one. *See In re J.P. Linahan, Inc.*, 111 F.2d 590, 592 (2d Cir.1940). The Equity Committee's principal argument is that the "clear abuse" standard was not satisfied. In addition, however, the Equity Committee seems to argue that the district court's analysis was incomplete; *i.e.*, the Equity Committee contends that in reviewing the bankruptcy court's decision to issue the injunction, the district court should have required, in addition to a showing of clear abuse, the usual showing of irreparable injury.

An examination of both lower court decisions will clarify the analysis that follows. The bankruptcy court found that "any shareholder meeting and ensuing proxy fight has the potential to derail the entire Manville reorganization with devastating consequences or at least to delay or halt plan negotiations." *In re Johns-Manville Corp.*, 52 B.R. at 888. Reviewing the bankruptcy court's findings, the district court concluded that the Equity Committee intended either to "torpedo" the reorganization or to acquire a bargaining chip in aid of its negotiation power. *In re Johns-Manville Corp.*, 60 B.R. at 852. In either case, the district court reasoned, the bankruptcy court did not err in concluding that the Equity Committee was guilty of clear abuse. *Id.* at 852–53.

■ Taking the district court's latter point first, we cannot agree that the Equity Committee's professed desire to arrogate more bargaining power in the negotiation of a plan—in contrast to some secret desire to destroy all prospects for reorganization—may in itself constitute clear abuse. The law of this circuit directs that the shareholders' natural wish to participate in this matter of corporate governance be respected. In *In re Bush Terminal Co.*, 78 F.2d 662 (2d Cir.1935), for example, this court reversed an order enjoining a shareholders' meeting to be called for the pur-

pose of advancing a rehabilitation plan more favorable to equity. Expressly upholding the right of a majority shareholder to try to replace board members for that purpose, the court reasoned:

> [T]he debtor is given the right to be heard on all questions. Obviously, the stockholders should have the right to be adequately represented in the conduct of the debtor's affairs, especially in such an important matter as the reorganization of the debtor. Such representation can be obtained only by having as directors persons of their choice. . . . [T]he debtor is given the power to propose a plan of reorganization. No reason is advanced why stockholders, if they feel that the present board of directors is not acting in their interest, or has caused an unsatisfactory plan to be filed on behalf of the debtor, should not cause a new board to be elected which will act in conformance with the stockholders' wishes.

*Id.* at 664.

The court in *In re Bush Terminal Co.* thus clearly intended to protect the right of stockholders to be heard in negotiations leading to a rehabilitation plan. As the court concluded, "If the right of stockholders to elect a board of directors should not be carefully guarded and protected, the statute giving the debtor a right to be heard or to propose a plan of reorganization could not truly be exercised, for the board of directors is the representative of the stockholders." *Id.* at 665. Under this analysis, the shareholders' mere intention to exercise bargaining power—whether by actually replacing the directors or by "bargaining away" their chip without replacing the board, as the district court suggests they may have wished to do—cannot without more constitute clear abuse. Unless the Equity Committee were to bargain in

bad faith—*e.g.*, to demonstrate a willingness to risk rehabilitation altogether in order to win a larger share for equity—its desire to negotiate for a larger share is protected. Moreover, if rehabilitation is placed at risk as a result of the other committees' intransigent unwillingness to negotiate with the Equity Committee, as opposed to their real inability, within some reasonable amount of time, to formulate any confirmable plan more satisfactory to equity, the Equity Committee should not alone bear the consequences of a stalemate by being deemed guilty of clear abuse.[6]

*In re Lionel Corp.*, 30 B.R. 327 (Bankr.S. D.N.Y.1983), buttresses our conclusion that shareholders' desire for leverage is not a basis for denying them an election, so long as leverage means only the improvement of their bargaining position or the assurance of their participation in negotiations. In *In re Lionel Corp.* the bankruptcy court held that the record failed to demonstrate how reorganization would be impeded merely because the shareholders might be successful in their quest to cause the reorganization to "take an entirely different turn." *Id.* at 330. Surely if the Equity Committee is permitted to elect new directors in order to redirect or alter the course of a reorganization—and the district court here explicitly recognized that the committee is permitted to do that, *see In re Johns-Manville Corp.*, 60 B.R. at 850—the Equity Committee should be permitted, in the district court's words of disapproval, to "use the threat of a new board as a lever vis-a-vis other interested constituencies and vis-a-vis the current Manville board." *Id.* at 852. The Equity Committee denies that there is evidence tending to show that it meant to use any "threat" as a "lever," but if there is any such evidence, it would suggest only that the Equity Committee might be willing to back away from replacing the directors

---

**6.** We note that if Manville were determined to be insolvent, so that the shareholders lacked equity in the corporation, denial of the right to call a meeting would likely be proper, because the shareholders would no longer be real parties in interest. Although the bankruptcy court discussed the possibility of Manville's insolvency in connection with its treatment of the Equity Committee's request for retention of special counsel and reimbursement of expenses, *see In re Johns-Manville Corp.*, 52 B.R. at 885, an issue that is not a subject of this appeal, the district court did not uphold the determination of clear abuse on that basis, and the parties have not briefed that issue.

if it were to find the board more responsive to its interests. For related reasons, we are not persuaded that the Equity Committee's failure to call for a meeting at an earlier stage in the negotiations places its desire for leverage in a different light. If dissatisfaction with the board's representation of shareholders is a legitimate ground for calling a meeting, the Equity Committee did not waive the right to call a meeting by waiting until it became dissatisfied.[7]

Finally, we reject appellees' suggestion that the availability to the Equity Committee of other means with which to oppose Manville's plan robs the Equity Committee of its chosen means. It is true that the Equity Committee could have sought the appointment of a trustee[8] to displace Manville as the sole author of proposed plans and that it may later object to the confirmation of any plan Manville submits to the bankruptcy court. But those correctives provide only imperfect substitutes for a voice in the original formulation of a plan. More to the present point, perhaps, those avenues to shareholder satisfaction cannot be said to be exclusive in light of this circuit's legitimation of the shareholders' right to elect new directors for the frank purpose of advancing a plan they prefer.

■ In this connection, we must reject Manville's argument that a full inquiry into "clear abuse" would duplicate the confirmation proceedings that will follow submission of its present plan or any other. Un-

like the analysis to determine clear abuse, the object of the confirmation proceedings will be to weigh Manville's proposed plan against other possible plans, taking into account the interests of impaired classes that object to Manville's proposals. In contrast, the determination whether the Equity Committee is guilty of clear abuse turns on whether rehabilitation will be seriously threatened, rather than merely delayed, if Manville's present plan is not submitted for confirmation now. *See In re Bush Terminal Co.*, 78 F.2d 662 (2d Cir.1935); *In re J.P. Linahan, Inc.*, 111 F.2d 590 (2d Cir. 1940); *In re Lionel Corp.*, 30 B.R. 327 (Bankr.S.D.N.Y.1983). Quite apart from its right to contest confirmation, the Equity Committee has the right to a fair hearing on the latter question and to a decision that recognizes its right to influence its own board.

We now reach the district court's alternative ground for affirming the grant of summary judgment. The bankruptcy court's finding that the proposed stockholders' meeting might jeopardize the reorganization process, "or at least ... delay or halt plan negotiations," 52 B.R. at 888, a finding reflected in the district court's view that the Equity Committee might have intended to "torpedo" the reorganization, poses an issue more difficult than the question of the stockholders' desire for a voice in negotiations. While delay to rehabilitation would not by itself provide a ground for overriding the shareholders' right to

7. We do not suggest, of course, that an equity committee's delay in calling a shareholders' meeting may never contribute to a finding of clear abuse. As the Securities and Exchange Commission pointed out in its brief, an attempt to call a shareholders' meeting after a plan has been submitted to the bankruptcy court and after confirmation hearings have begun would usually be more disruptive to the proceedings than an earlier attempt would be. Such an attempt might also indicate bad faith and a willingness to risk jeopardy to rehabilitation. On the other hand, a rule that required a call before dissatisfaction had crystallized would only encourage preemptive efforts that might otherwise be avoided by negotiation. In this case, the Equity Committee apparently acted promptly upon learning of Manville's proposed plan and is certainly not accountable for any

movement toward confirmation that may have occurred thereafter over its objections.

8. A committee ... may move for the appointment of a trustee where current management is not, in the opinion of the committee, negotiating the terms of a plan in good faith. The committee may conclude that the positions taken by the debtor's control group in connection with plan negotiations are not in the best interests of creditors or equity interests. Under such circumstances, the committee may request the appointment of a trustee in order to terminate the control status of current management and to enable the committee to file a plan of reorganization under section 1121(c)(1).
   5 *Collier on Bankruptcy* ¶ 1103.07[7], at 1103–27 to 1103–28 (15th ed. 1986).

govern Manville—delay being a concomitant of the right to change boards—real jeopardy to reorganization prospects would provide such a ground.

In *In re Potter Instrument Co.*, 593 F.2d 470 (2d Cir.1979), this court upheld the bankruptcy court's refusal, upon a finding of clear abuse, to order a shareholders' meeting to be called for the purpose of electing new directors. We reasoned that "such an election might result in unsatisfactory management and would probably jeopardize both [the debtor's] rehabilitation and the rights of creditors and stockholders—sounding the 'death knell' to the debtor as well as to appellant himself." *Id.* at 475. In *In re Potter Instrument Co.*, however, the facts were distinct from those considered here, at least on the record before us. Potter, the appellant, had agreed in a consent decree with the Securities and Exchange Commission to limit his management in the debtor and not to vote against any action recommended by a majority of the board of directors. *Id.* at 474. Attempting to circumvent the agreement, Potter sought to elect new directors who would vote against a proposed plan that would cause the debtor to issue new stock to unsecured creditors and thereby dilute Potter's holdings. The bankruptcy court had found that approval of a plan could probably never be accomplished without issuance of the stock. In addition, the bankruptcy court had noted that it would not be likely to approve control of the debtor by Potter in light of the record before it. *Id.*

It thus appears that the Equity Committee might distinguish itself from the shareholder in *In re Potter Instrument Co.*, given the opportunity for an evidentiary hearing. The Equity Committee persuasively calls into question whether the bankruptcy court had any basis for concluding here that an election would jeopardize the reorganization process, particularly since the bankruptcy court's articulated basis appears to have been colored by an unsubstantiated suspicion that the Equity Committee affirmatively wished to jeopardize reorganization.[9] Perhaps Potter was willing to embark on a suicide mission, "sounding the 'death knell' to . . . himself" along with the debtor. But as the Equity Committee argues, the lower courts in this case pointed to no evidence to support any finding that it wished to "torpedo" the reorganization, which the Equity Committee contends would be an irrational goal from its perspective.

The bankruptcy court stated that it relied on "the cumulative record in this case" to distinguish it from *In re Lionel Corp.*, 30 B.R. 327 (Bankr.S.D.N.Y.1983), and *In re Saxon Industries*, 39 B.R. 49 (Bankr.S.D. N.Y.1984), and to justify application of the *In re Potter Instrument Co.* rationale. *See In re Johns-Manville*, 52 B.R. at 888.

---

**9.** In reviewing the bankruptcy court's decision, the district court characterized its findings as follows:

[T]he dim prospects for a successful reorganization following the election of a new board led the bankruptcy court to question the Equity Committee's motivation in seeking a new election. By its own admission, the Equity Committee brought the Delaware action in order to derail the proposed plan. Either the appellants seek to destroy any prospect for a successful reorganization, or they wish to use the threat of a new board as a lever vis-a-vis other interested constituencies and vis-a-vis the current Manville board. Neither the interest in torpedoing the reorganization nor in acquiring a chip to be bargained away are legitimate. Judge Lifland, who was well aware of the dynamics of the Manville bankruptcy, had ample evidence from which to conclude that by either attempting to destroy the prospects for a successful reorganization or by merely attempting to strengthen its bargaining position without changing the current board, the Equity Committee was acting in a clearly abusive manner.

60 B.R. at 852 (footnotes omitted). The bankruptcy court decision itself did not define the Equity Committee's supposed ill motives quite so clearly. At one point, however, the bankruptcy court observed that "[s]ection 105(a) contemplates the court's use of injunctive relief in precisely those instances where parties are attempting to obstruct the reorganization." 52 B.R. at 889. The bankruptcy court then concluded that "[t]he *carefully timed* Delaware action will have an adverse impact on the Debtor's ability to coalesce with others to formulate an acceptable Chapter 11 plan resulting in irreparable harm and the impeding of the negotiation process." *Id.* at 890 (emphasis added).

The only evidence the bankruptcy court cited, however, apart from evidence that the Equity Committee meant to influence negotiations in its favor, was the affidavit of G. Earl Parker, a Manville director who might have been replaced if an election had been held. Parroting *In re Potter Instrument Co.*, Parker's affidavit merely concluded that "[t]he consequences flowing from yet another stalemate would place in jeopardy the ability of the Debtors ever to confirm a plan of reorganization or to pay its [sic] just debts." 52 B.R. at 888. The district court affirmed on the basis of the Parker affidavit, coupled with the bankruptcy court's "accumulated knowledge" about the case.

The evidence contained in the Parker affidavit, consisting principally of the conclusion quoted above, is insufficient to support the determination of clear abuse underlying the grant of summary judgment. *See* Rule 56(e), Fed.R.Civ.P. While we agree with the district court that it was proper for the bankruptcy court to consider the record as a whole in determining whether summary judgment was appropriate, *see* Rule 56(c), Fed.R.Civ.P., without being told which portions of the bankruptcy court's accumulated knowledge it relied on for decision, we cannot agree that no material issues of fact remain to be determined.[10]

Moreover, as the Equity Committee argues, a finding of clear abuse must be supplemented by a finding of irreparable injury before an injunction may issue. The bankruptcy court seemed to assume that the two inquiries coalesce; after finding clear abuse, it concluded without further analysis that an injunction was necessary to prevent irreparable harm to the reorganization. *In re Johns-Manville Corp.*, 52

B.R. at 891. *Cf. In re Lionel Corp.*, 30 B.R. at 329 (Although the shareholders wished to alter the course of reorganization, "Lionel has failed to demonstrate any irreparable harm, which factor alone requires a denial of an injunction."). In affirming the bankruptcy court, the district court did not discuss the irreparable injury prerequisite for relief.

Although the inquiries into clear abuse and irreparable injury will likely yield the same result in most if not all cases, an articulated analysis of irreparable injury would achieve a better focus and assist the reviewing court. In this connection, it is worth noting that *In re Potter Instrument Co.*, the only authority for a finding of clear abuse in circumstances resembling Manville's, did not deal with injunctive relief at all. There the court merely declined to direct a shareholders' meeting. In any event, on this record any harm to the reorganization was speculative enough that the irreparable injury requirement was not satisfied.

We address finally the problem posed by the litigants' concessions below. The bankruptcy court found no issue of fact in dispute. The district court affirmed the bankruptcy court's *sua sponte* award of summary judgment to Manville because "there was nothing to be gained in this instance from a full evidentiary hearing." *In re Johns-Manville Corp.*, 60 B.R. at 853. Although the parties now vigorously dispute whether a shareholders' meeting would in fact jeopardize reorganization, they conceded in bankruptcy court "that the posture of this case ... allow[ed] this Court to grant or deny summary judgment to either Manville or the Equity Committee in whole or in part." *In re Johns-Manville Corp.*,

---

**10.** In Manville's view, the bankruptcy court did review the facts that led it to find "clear abuse," adverting in its opinion to the facts that Manville had been in bankruptcy for three years without any resolution, 52 B.R. at 881; that Manville and committee representatives had engaged in extensive but fruitless negotiations, *id;* that Manville did not reach agreement with any other constituency until August 1985, *id.* at 882; that "[w]ithin two weeks of the announcement of the Principal Elements Agreement, the Equity

Committee filed its motion ... for the purpose of instituting the Delaware Action," *id.;* and that "no shareholder or director has at any time sought to compel the calling of a shareholder's meeting for the years 1983, 1984 or 1985," *id.* We do not think that this bare recitation of the events culminating in Manville's plan and the Equity Committee's discontent, when added to the bankruptcy court's stated basis for decision, constitutes a showing that the Equity Committee committed clear abuse.

52 B.R. at 891. Manville argues that by making such a concession, the Equity Committee adopted the Parker affidavit.

The Equity Committee denies having conceded the conclusions in the Parker affidavit,[11] and Manville itself points out that the Equity Committee argued to the district court that the affidavit was incompetent. Moreover, any concession to facts set forth in the Parker affidavit would hardly have authorized the bankruptcy court to base its decision on a fact that the Equity Committee did not admit; it would not have authorized the court to conclude that jeopardy to reorganization was more likely to occur in part because the Equity Committee, which confessed only to its desire to thwart particular proposals, was motivated to undermine all rehabilitation plans. Since the Equity Committee did not concede any such motivation, the court should not have rendered summary judgment upon the strength of a finding thereof. Nor do we believe that the Equity Committee can be deemed to have conceded the entire content of the bankruptcy court's "accumulated knowledge." An evidentiary hearing was necessary before granting summary judgment on the basis of either of those grounds. Articulation of the grounds for decision should then have followed. *See In re Teltronics Services, Inc.*, 18 B.R. 705, 708 (E.D.N.Y.1982).

On the record before us we cannot say that either side is entitled to summary judgment in its favor. There may be evidence known to the bankruptcy court but unarticulated in its opinion to support the result it reached. Manville's burden on remand, however, will be altered in accordance with this opinion.

### Conclusion

Whether the Equity Committee's call for a shareholders' meeting constitutes clear abuse and whether such a meeting would cause irreparable harm to Manville's reorganization are triable issues of fact. The summary judgment award to Manville is therefore reversed. On remand, the court should undertake a more elaborate inquiry into clear abuse and irreparable harm. Rather than focusing on the Equity Committee's conceded desire to enhance its bargaining position, the court should analyze the real risks to rehabilitation posed by permitting the Equity Committee to call a meeting of shareholders for the purpose of compelling reconsideration of Manville's presently proposed plan. We emphasize, however, that given its greater knowledge about this complex and perhaps fragile reorganization, the bankruptcy court may exercise its legitimate injunctive powers to control the future course of rehabilitation pursuant to appropriate legal standards and evidentiary showings.

OAKES, Circuit Judge (dissenting):

I am unclear what the majority intends to accomplish by the reversal and remand, except to compel bankruptcy judges and district courts to make more precise findings in support of their orders. Ordinarily I would support such a limited remand, especially where, as here, the bankruptcy court's reasoning required supplementation by the district court. But here confirmation of a plan in one of the most complicated and difficult bankruptcy reorganizations in history is well under way, and I fear that the court's opinion will not only unnecessarily duplicate, but it will, if not derail, at least delay the confirmation proceedings.

After all, the proposed plan had been in heated, tricky, combative negotiation for some three years prior to the Equity Committee's actions. If the plan is indeed biased, the Equity Committee has ample opportunity to oppose confirmation and to prove discrimination or unfairness to it.

11. Indeed, at oral argument before the bankruptcy court, the Equity Committee argued that the Parker affidavit is:

unsupported by facts, unsupported by exhibits, without any details is simply a bald conclusory statement which peers into the future and by its nature is basically conjectural, speculative and does not give rise to the level of an evidentiary showing, that the things he [Parker] says might happen will happen or could happen.

Record Item 20 at 13.

*See* 11 U.S.C. § 1129(b) (1982 & Supp. III 1985).

Under *In re Potter Instrument Co.*, 593 F.2d 470 (2d Cir.1979), the court has a duty to refuse to order a shareholder's meeting upon a showing of clear abuse which "would probably jeopardize both [the debtor's] rehabilitation and the rights of creditors and stockholders...." *Id.* at 475. To seek a shareholders' meeting at this late date, it seems to me, is just such a clear abuse. The Equity Committee, if it has its way, would set this reorganization back to square one. Apparently satisfied with the Board of Directors for three years following the filing of the bankruptcy petition, the committee waited until the directors finally proposed a plan to object, not only to the plan, but to the directors themselves. In addition to seeking to upset the plan, it is now trying to replace the directors, a result that would require negotiations to recommence from the beginning. In such a complex and lengthy proceeding as this one, the Equity Committee's actions seem to me to be the very essence of abuse. Moreover, the bankruptcy court's determination that a shareholders' meeting would lead to "waste of this estate's resources and thereby jeopardize the reorganization process" and that it "has the potential to derail the entire Manville reorganization with devastating consequences or at least to delay or halt plan negotiations" adequately supports its conclusion of irreparable harm.

But there is an entirely different reason that argues for affirmance. The bankruptcy judge has been living with this reorganization for a long time. He is fully sensitive to the enormity of the problems imposed by billions of dollars of future claims, as well as by billions of dollars of present claims for personal injury, death, and property damage—claims on a scale never before to hit the courts—as well as claims for punitive damages that, given those that have so far been imposed in the tiny fraction of cases that have been decided, are staggering to say the least. I repeat, no more complex reorganization has ever come before any bankruptcy court,

and I include the railroad reorganization of recent past as well as of yore. I would here, as seldom elsewhere, defer to the bankruptcy court's discretion.

Yet a third reason calls for no further delay in the name of abstract stockholders' rights. There are innocent injured people, some of whom are survivors of deceased persons, whose recoveries have already been unduly delayed by the reorganization proceedings. Further delay will in many instances be unconscionable.

I would affirm outright and leave the Equity Committee to its usual remedy of objecting to the plan and its fairness in the confirmation proceeding.

Accordingly, I respectfully dissent.