In re COORDINATED APPAREL, INC., Debtor.

In re COORDINATED APPAREL HOLDINGS, INC., Debtor.

In re COORDINATED APPAREL GROUP, INC., Debtor.

In re DRIFTER INTERNATIONAL, INC., Debtor.

Bankruptcy Nos. 93 B 45106 to 93 B 45109.

United States Bankruptcy Court, S.D. New York.

Feb. 17, 1995.

J.A. Beldner of Siegel, Sommers & Schwartz, New York City, for debtors.

D. Wander, New York City, for Summer Sportswear, Inc. (Summer).

W.R. Fabrizio of Hahn & Hessen, New York City, for CIT Group/Commercial Services, Inc. (CIT).

A. Gottfried of Zalkin, Rodin & Goodman, New York City, for Chemical Bank (Chemical).

## MEMORANDUM OF DECISION UPHOLDING ARTISAN'S LIEN ACQUIRED POSTPETITION

FRANCIS G. CONRAD, Bankruptcy Judge[*].

Summer, a postpetition creditor, moved[1] for an order modifying and terminating the automatic stay in order to liquidate certain inventory belonging to Debtors in Summer's possession. Summer seeks to apply the proceeds from sale of the inventory to satisfy its $180,000 administrative expense claim against the estate. Summer also asserts a postpetition artisan's lien in the inventory under N.Y. Lien Law § 180 as a result of fabrication work performed for Debtors after the filing date.[2] Summer's motion is opposed by Chemical and CIT, both senior lienholders with security interests in the inventory. At the hearing on Summer's motion, we denied relief from the automatic stay, and directed Summer to turn over the inventory, holding that if Summer did have an artisan's lien, the lien was adequately protected. Finally, we reserved decision on whether Summer has in fact acquired a valid postpetition artisan's lien on the inventory in its possession. We now hold that Summer did acquire a valid artisan's lien under N.Y. Lien Law § 180, and that its lien takes priority over the security interests of Chemical and CIT.

### FACTUAL BACKGROUND

On October 14, 1993, Debtors filed voluntary petitions with this court for reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101 et seq. The cases were consolidated for administrative purposes only. Debtors manufactured various lines of clothing for boys, girls, men, and women that were distributed nationally to major chains, large retailers, and department and specialty stores.

After Debtors filed their petitions, we entered orders authorizing postpetition financing under § 364[3] of the Bankruptcy Code. A November 22, 1993 Factoring Order authorized Debtor to assume, subject to certain modifications, a prepetition factoring arrangement with CIT. Thereafter, we entered various orders extending the CIT factoring arrangement through January 6, 1995. As security for all Debtors' obligations to CIT, the Factoring Order granted CIT a

> valid, binding, enforceable and perfected first security interest and lien in all of the Debtors' ... property and assets, whether such property and assets were acquired by the Debtors before or after the Petition Date, of any kind or nature, ... wherever located ..., and the proceeds thereof, subject only to valid liens (i) otherwise senior or equal to CIT as of the Petition Date ..., and (ii) not subject to avoidance by a trustee under the Bankruptcy Code....

Debtors' owed CIT $7.2 million under this agreement as of December 8, 1994.[4]

Chemical has a second priority security interest in all of the Debtors's accounts and inventory (excluding raw materials), a first priority security interest in machinery and equipment, and a *pari passu* security interest with CIT in the Debtor's intangible assets. Chemical made certain loans to Debtors under an Amended and Restated Credit Agreement dated November 13, 1992. As of the date of filing, Debtors owed Chemical $4.73 million under this credit agreement.

---

[*] Sitting by special designation to the Southern District of New York.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(A), (K), (M), and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52 as made applicable by Fed.R.Bkrtcy.P. 7052.

2. N.Y. Lien Law § 180 provides:
   > A person who makes, alters, repairs, or performs work or services of any nature and description upon, or in any way enhances the value of an article of personal property, at the request or with the consent of the owner, has a lien on such article, while lawfully in possession thereof, for reasonable charges for the work done and materials furnished, and may retain possession thereof until such charges are paid.

   N.Y. Lien Law § 180 (McKinney 1994).

3. All statutory references are to Title 11 of the United States Code, unless otherwise specifically noted.

4. Debtor is liquidating. By the time this Memorandum of Decision is issued, CIT may be fully paid.

A February 12, 1993 security agreement granted Chemical a security interest in, *inter alia*, Debtors' machinery and equipment, accounts and inventory, and the proceeds thereof. On November 22, 1993, we entered an order providing Chemical with adequate protection, including (i) a continuing security interest in all of Debtors' accounts and inventory (except raw materials), subject only to the prior security interest of CIT; and, (ii) a continuing first priority security interest in Debtors' prepetition machinery and equipment; and (iii) a *pari passu* security interest with CIT in Debtors' prepetition general intangibles, patents, trademarks, rights of payment, and tax refunds, and the proceeds thereof.

As part of a postpetition manufacturing agreement, Debtors shipped piecegoods to Summer's place of business in New York City for Summer to make them into finished articles of clothing for delivery to Debtors' customers. Summer claims that it is owed approximately $120,000 for labor, equipment and materials relating to the finished inventory that is currently in its possession. Summer also claims that it holds an additional postpetition administrative claim of $60,000 for labor and materials furnished for other piecegoods manufactured into finished products. Summer admits these goods have already been shipped, and that it has no statutory lien in them.

### DISCUSSION

Summer correctly argues that § 362(b)(3) excepts from the automatic stay provided by § 362(a) "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under § 546(b)." Section 546(b), in turn, makes the "rights and powers of a trustee under 544, 545 and 549 ... subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." Section 546(b) also permits perfection of an interest in property, such as a statutory lien, to be effective against the trustee if any generally applicable non-bankruptcy law would permit this result against another intervening interest holder. The statute in this case, New York Lien Law § 180, gives Summer a lien superior to the liens of both CIT and Chemical.

The plain meaning rule of statutory construction supports Summer's position, and indeed, requires that we decide in its favor. The Supreme Court has stated that when the language of the Bankruptcy Code is clear and unambiguous, the plain meaning of the statute controls its interpretation, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290, 299 (1989), *quoting, Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

█ A plain reading of N.Y. Lien Law § 180 reveals that a lien on the inventory in Summer's possession arose simply by virtue of the fact that Summer sewed the clothes. This provision reflects the legislature's determination to protect entities like Summer, which provide labor, equipment and materials that increase the value of another entity's property. The statute provides that the mere performance of work enhancing the value of an article of property, combined with possession, gives rise to an artisan's lien. Thus, § 362(a)(4) of the Bankruptcy Code does not apply, because Summer took no act except to fabricate clothes. Moreover, Summer provided value to the secured creditor's collateral and therefore is entitled to payment under 11 U.S.C. § 506(c).

█ As an alternative basis for our holding, we note that § 363(c)(1) authorizes the trustee to

> enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

Debtor has been authorized to operate its business in the ordinary course, and the ordinary rules apply, including the right to give and receive security interests and be subject

to statutory liens. Section § 363(c)(1) is at the core of the Trustee's authority to use collateral or other property in which another entity has an interest in the ordinary course of the business of the debtor. As long as Debtors are authorized to operate their businesses, and unless a court orders otherwise, the general rule is that a trustee may use, sell, or lease property of the estate in the ordinary course of business without notice or a hearing. *See, Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),* 853 F.2d 700, 703–04 (9th Cir.1988).

The Bankruptcy Code does not define the term "ordinary course," nor is its legislative history any more elucidating. *See, In re The Leslie Fay Companies, Inc.,* 168 B.R. 294, 304 (Bkrtcy.S.D.N.Y.1994). Courts generally have applied a two-part test to determine whether a transaction is in the ordinary course of business. In the first part of this test, the "vertical dimension" test, a court analyzes the transactions "from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those [it] accepted" when it initially contracted with the debtor. *Dant & Russell, supra,* 853 F.2d at 705, *quoting, In re Johns–Mansville Corp.,* 60 B.R. 612, 616 (Bkrtcy.S.D.N.Y. 1986), *rev'd on other grounds,* 801 F.2d 60 (2d Cir.1986); *see also, In re Roth American, Inc.,* 975 F.2d 949, 952–53 (3d Cir.1992). In the second part of the analysis, the "horizontal dimension" test, the court must determine "whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." *Dant & Russell, supra,* 853 F.2d at 704; *see also, Roth American, supra,* 975 F.2d at 953; *Johns–Mansville, supra,* 60 B.R. at 618. Under this two-part analysis, "[t]he touchstone of 'ordinariness' is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *Armstrong World Industries, Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.),* 29 B.R. 391, 394 (S.D.N.Y.1983).

In the present case, a hypothetical creditor could reasonably expect a debtor engaged in the business of manufacturing and distributing clothing to enter into a contract for the manufacture of clothing. In addition, the transactions at issue here are of the type that similar manufacturing companies would enter into in the ordinary course of their businesses. Accordingly, we hold that the ordinary, non-bankruptcy rules apply, and Summer acquired a valid artisan's lien.

Our holding is justified not only by the plain meaning of the statutes discussed above, but by sound policy considerations. Summer argues that firms like it will refuse to deal with debtors-in-possession postpetition if bankruptcy changes the rules which apply in the ordinary course to increase their risk of nonpayment. We agree. The fundamental bankruptcy goal of debtor reorganization would be adversely affected by a rule that provided extraordinary protections to bankruptcy debtors and their senior creditors in the ordinary course. Thus, we hold that Summer acquired a valid artisan's lien that primed the security interests of CIT and Chemical.

Summer is to submit an Order on five days' notice.