## In the Matter of AMERICAN MEDIA DISTRIBUTORS, LLC, Debtor.

### Bankruptcy No. 97–20760–575.

United States Bankruptcy Court, E.D. New York.

Feb. 5, 1998.

Parker Chapin Flattau & Klimpl, LLP by Henry Condell, New York City, for Pelham News Co., Inc., Pellham/American Periodical Distributors, Inc., Vincent Orlando and Joseph Orlando.

Shaw Licitra Asernio & Schwartz, P.C. by Stuart I. Gordon, Garden City, NY, for American Media Distr., LLC.

Sylvor & Richman, LLP by Iris S. Richman, New York City, for Media American

Distributors, Inc., Anthony Orlacchio, Michael Pouchie and Matthew Peres.

Hahn & Hessen, LLP by David I. Blejwas, New York City, for Official Committee of Unsecured Creditors of American Media Distributors, LLC.

Office of U.S. Trustee by Alfred Dimino, Garden City, NY.

## MEMORANDUM OPINION AND ORDER

LAURA TAYLOR SWAIN, Bankruptcy Judge.

This case comes before the Court on the motion of Pelham News Company, Inc., Pelham/American Periodical Distributors, Inc., Vincent Orlando and Joseph Orlando (collectively, "Movants" or "Pelham/American Group") for an order lifting the automatic stay, to the extent that it is applicable, to permit the arbitration of certain claims arising under an operating agreement relating to the conduct of business of the debtor herein, American Media Distributors, LLC (the "Debtor"). The counter parties to the operating agreement, and the respondents in the instant motion, are non-debtors Media American Distributors, Inc., Anthony Orlacchio, Michael Pouchie and Matthew Peres (collectively, "Respondents" or "Media Group"). Debtor is not a party to the operating agreement and would not be a respondent in the arbitration proceeding.

The Court has considered thoroughly all submissions and argument in support of and in opposition to Movants' request for relief. For the following reasons, the Court finds that the automatic stay does not apply to the subject dispute and that the provisions of 11 U.S.C. § 362(a) therefore do not preclude Movants from commencing or continuing their action against Respondents in an arbitral forum.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R.Bankr.P. 7052 with respect to this contested matter. The Court has jurisdiction of these core proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(G), and the Order of Reference of the United States District Court for the Eastern District of New York dated August 28, 1986.

### Findings of Fact

The Court makes the following findings of fact based upon the undisputed evidence proffered by the parties. To the extent such findings incorporate conclusions of law they shall constitute conclusions of law for purposes of Fed.R.Bankr.P. 7052 as fully as if denominated as such.

1. Movants Pelham News Company, Inc. ("Pelham") and Pelham/American Periodical Distributors, Inc. ("American") are member companies of the Debtor, each holding a 24.75% membership interest and having a collective equity ownership interest of 49.5%. Movants Vincent Orlando and Joseph Orlando are the shareholder/owners of Pelham and American.

2. Respondent Media American Distributors, Inc. ("Media") is a member company of the Debtor, holding a 49.5% equity interest. The remaining Respondents are shareholder/owners of Media.

3. The respective member companies of the Debtor were competitors prior to joining forces in 1996 to create the Debtor.

4. Movants and Respondents are parties to a written operating agreement, dated December 27, 1996 (the "Operating Agreement"). The Operating Agreement governs the management of the Debtor and sets forth certain powers and responsibilities of its members, managers and employees. As noted above, the Debtor is not a party to the Operating Agreement.

5. The Operating Agreement contemplates joint control over the Debtor by the Pelham/American Group and the Media Group. The Operating Agreement provides in pertinent part:

    ¶ 3. Members/Managers.

    a. Management of this Company shall be vested in the managers ..., and all decisions will be made in accordance with the annexed Decision Matrix and Organization Chart ...

g. The Articles of Organization shall provide that the management of the Company shall be vested in the managers ... There will be seven (7) managers. The members must vote to elect two (2) managers nominated by Media, one (1) manager nominated by Pelham, one (1) manager by American, and two (2) managers, not affiliated with or related to any of the members, the Media shareholders, or the Pelham or American shareholders, to be mutually agreed upon by the members. The Chairman will be the seventh manager, who will have no vote unless there is a tie. All the votes will be broken by vote of the Chairman. For so long as he is a manager, V. Orlando will have the titles Chief Executive Manager ("CEM") and Chairman; Orlacchio will have the titles President and Chief Operating Manager ("COM"). Notwithstanding the foregoing, all decisions will be made in accordance with the annexed Decision Matrix and Organization Chart.

6. The Operating Agreement contains a broad arbitration clause that provides:

¶ 17. Resolution of Disputes.

a. Any dispute arising from this Agreement or any agreement among the parties referred to herein shall be determined before a single arbitrator in [sic] the American Arbitration Association, New York, New York. In any such proceeding, the prevailing party shall be entitled to reasonable attorneys' fees and costs in addition to any amounts awarded. Such arbitrator shall have authority to grant equitable relief and money damages.

7. Respondents caused Debtor to file its Chapter 11 bankruptcy petition in this case on September 24, 1997.

8. Movants commenced an arbitration proceeding against Respondents on October 2, 1997, alleging numerous breaches of the Operating Agreement and other misconduct on the part of Respondents. Respondents asserted a counterclaim based on fraud in the inducement.

9. The bulk of Movants' causes of action were withdrawn or dismissed without prejudice in December 1997. At that time, the arbitrator informed the parties that he would take no further action in respect of Movants' efforts to secure specific performance of the corporate governance provisions of the Operating Agreement unless the Movants obtained an order from this Court modifying the automatic stay imposed by 11 U.S.C. § 362(a) to permit the arbitration proceeding to go forward. The instant motion followed.

*The Parties' Contentions*

Movants allege that Respondents have breached the Operating Agreement by engaging in a "coup" to take control of the Debtor and that Respondents have effectively ousted Movants from the management of the Debtor. Movants allege that Respondents have, *inter alia,* barred Movants' access to Debtor's physical premises, books, records and computer system and have engaged in decision making processes inconsistent with the terms of the Operating Agreement.

In this motion, Movants seek permission to invoke the arbitration provisions of the Operating Agreement to resolve their claims of breach of contract. Movants represent that the relief sought through arbitration will be limited to specific enforcement of the Operating Agreement by: (a) a declaration (i) restoring the status quo of management (particularly restoring Vincent Orlando to his position in management) and (ii) that the decisions of the Debtor shall be made jointly by Movants and Respondents; and (b) an award of attorneys fees as provided under the Operating Agreement.

Movants disclaim the applicability of the automatic stay to their efforts to enforce the arbitration clause and governance provisions of the Operating Agreement, and argue, alternatively, that there is cause to lift the stay if it is applicable.

Debtor, Respondents, the Creditors Committee and the Office of the United States Trustee have opposed the motion, arguing that the Court should deny the motion or

unilaterally delay lifting the stay, but have offered little to no explanation as to why the automatic stay would apply in the first place to enjoin an arbitration of business governance issues between non-debtor entities. The opponents assert, instead, that granting of the relief sought by Movants would jeopardize a recently-proposed buyout of substantially all of Debtor's assets by an entity to be formed by certain of Respondents and a principal client of Debtor. They focus principally on anticipated "distraction" of Debtor's current management (*i.e* ., Respondents) if Movants are permitted to pursue their claims in arbitration.

### Conclusions of Law

■ Arbitration of Movants' dispute with Respondents is not barred by the automatic stay. It is a simple contract dispute between two sets of equity holders who are non-debtor parties, albeit a dispute whose outcome may have a significant effect on the conduct of Debtor's day-to-day affairs. Such a potential effect does not, however, bring the matter within the prohibition imposed by 11 U.S.C. § 362(a) on actions involving debtors and their property.

■ "Stays pursuant to 11 U.S.C. § 362(a) are [generally] limited to debtors and may not [ordinarily] be extended to non-bankrupt entities." *In re United Health Care Organization,* 210 B.R. 228, 232 (S.D.N.Y.1997) (citation omitted). Very limited exceptions to this rule have been recognized in this Circuit where, for instance, the action of a non-debtor party would have clear adverse effects on property interests of the debtor. *See In re Prudential Lines Inc.,* 928 F.2d 565 (2d Cir.1991) (automatic stay bars non-debtor corporate parent's taking of worthless stock tax deduction because such deduction would have adverse impact on debtor subsidiary's ability to carry forward certain net operating losses), *cert. denied sub. nom. PSS S.S. Co., Inc. v. Official Committee of Unsecured Creditors,* 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991); *In re 48th Street Steakhouse, Inc.,* 835 F.2d 427, 431 (2d Cir.1987) (attempt to terminate lease of non-debtor prime tenant barred by automatic stay where attempt to terminate lease "if successful, would have resulted in the destruction of [the debtor's] subtenancy"), *cert. denied sub. nom. Rockefeller Group, Inc. v. 48th Street Steakhouse, Inc.,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988). This is not such a case.

■ Furthermore, "the automatic stay provisions of the Bankruptcy Code are not implicated by the exercise of shareholders' corporate governance rights." *In re Marvel Entertainment Group, Inc.,* 209 B.R. 832, 838 (D.Del.1997). The Court of Appeals for the Second Circuit has held that the right of shareholders to compel a shareholders' meeting for the purpose of electing a new board of directors subsists during reorganization proceedings. *In re Johns–Manville Corp.,* 801 F.2d 60, 64 (2d Cir.1986). In *Johns–Manville,* even though the disputed election had clear potential for diverting the attention of current management and, depending upon its outcome, changing the debtor's reorganization strategy, the issue considered by the Court was whether an affirmative injunction should issue to *stop* the election, not whether the stay would have prevented the election from going forward. Indeed, in holding that such an election can be enjoined only upon evidence of "clear abuse," the Court recognized that shareholders' rights to govern their corporation are "a prerogative ordinarily uncompromised by reorganization." *Id.* at 64. Nor is a shareholder's mere "desire to arrogate more bargaining power in the negotiation of a [Chapter 11] plan" sufficient to support a finding of "clear abuse." Moreover, even where clear abuse is present, an additional showing of irreparable harm is required before an injunction can properly issue. *Id.* at 64, 68.

■ Movants here seek to invoke arbitration in order to assert their business governance rights under the Operating Agreement. Like those of ordinary corporate shareholders, their rights to participate in the governance of the business in which they hold equity interests are neither enjoined automatically nor abrogated upon the filing of a bankruptcy petition. It will be for the arbitral forum—the forum chosen by the parties and specified in the Operating Agreement—to determine whether, and to what extent, Movants' rights have been violated.

Defenses and counterclaims relating to allegations of fraud in the inducement are similarly outside the scope of the automatic stay where, as here, such claims are between non-debtors and have no effect on the debtor's property.

### Conclusion

For the foregoing reasons, the Court holds that the automatic stay does not apply to bar the commencement or continuation of arbitration proceedings to resolve Movant's claims, as set forth in their motion, with respect to Respondents' alleged breach of the governance provisions of the Operating Agreement, nor does the stay apply to bar the arbitration of claims or counterclaims relating to alleged fraud in the inducement in connection with the Operating Agreement.

SO ORDERED.